UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DOUGLAS P., | ) No. CV 17-8668-PLA |
| Plaintiff, | ) **MEMORANDUM OPINION AND ORDER** |
| v. | ) |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

## I.

## **PROCEEDINGS**

Plaintiff[1] filed this action on November 30, 2017, seeking review of the Commissioner's[2] denial of his application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before a Magistrate Judge on February 22, 2018, and March 9, 2018. Pursuant to the

---

[1] In the interest of protecting plaintiff's privacy, this Memorandum Opinion and Order uses plaintiff's (1) first name and last initial, and (2) year of birth in lieu of a complete birth date. See Fed. R. Civ. P. 5.2(c)(2)(B), Local Rule 5.2-1.

[2] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul, the newly-appointed Commissioner of the Social Security Administration, is hereby substituted as the Defendant herein.

Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on April 22, 2019, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

## II.
## BACKGROUND

Plaintiff was born in 1950. [Administrative Record ("AR") at 168.] He has past relevant work experience as a hotel worker and as a retail worker. [AR at 20.]

On December 10, 2013, plaintiff filed an application for a period of disability and DIB, alleging that he has been unable to work since September 5, 2007. [AR at 18; see AR at 168.] After his application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 18, 87-88.] A hearing was held on January 18, 2017, at which time plaintiff appeared represented by an attorney and testified on his own behalf. [AR at 18, 29-40.] Two medical experts ("ME") also testified.[3] [AR at 18, 37-38, 39-40.] On February 10, 2017, the ALJ issued a decision concluding that plaintiff was not under a disability from September 5, 2007, the alleged onset date, through September 30, 2007, the date last insured. [AR at 18-23.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 167.] When the Appeals Council denied plaintiff's request for review on September 25, 2017 [AR at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.
## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's

---

[3] While the ALJ noted in her decision that Ronald K. Hatakeyama, a vocational expert ("VE"), testified at the hearing [AR at 18], the transcript reflects that VE "Swan" Hatakeyama, was present, but it appears that he was **not** called to testify. [AR at 31, 32.]

decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

**A. THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468

F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry, 468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity from September 5, 2007, the alleged onset date, through September, 30, 2007, his date last insured. [AR at 20.] At step two, the ALJ concluded that through the date last insured, plaintiff had the

medically determinable impairments of kidney stones, renal cyst, prostatitis, and asymptomatic HIV infection. [Id.] The ALJ also mentioned the following: (1) plaintiff's complaint of knee pain in November 2007, noting that it was after the date last insured; (2) a January 2008 MRI of plaintiff's right knee; and (3) plaintiff's total right knee replacement surgery in November 2008. [AR at 21.] The ALJ concluded that through the date last insured, plaintiff did not have a severe impairment or combination of impairments. [Id.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of September 5, 2007, through September 30, 2007, the date last insured. [AR at 22.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when she failed to properly consider the testimony of the medical expert, Howard Milstein, M.D. [JS at 3-10, 13-16.] As set forth below, the Court agrees with plaintiff, and remands for payment of benefits.

A.  **MEDICAL OPINIONS**

   1.  **Legal Standard**

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527.[4] The Ninth Circuit has recently reaffirmed that "[t]he medical opinion of a claimant's treating physician is given

---

[4] The Court notes that for all claims filed on or after March 27, 2017, the Rules in 20 C.F.R. § 404.1520c (not § 404.1527) shall apply. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c. Thus, the new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. See 20 C.F.R. § 404.1520c; see also 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016). However, the claim in the present case was filed before March 27, 2017, and the Court therefore analyzed plaintiff's claim pursuant to the treating source rule set out herein. See also 20 C.F.R. § 404.1527 (the evaluation of opinion evidence for claims filed prior to March 27, 2017).

'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)) (second alteration in original). Thus, "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison v. Colvin, 759 F.3d at 1012 (citing Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan v. Comm'r of Soc. Sec., 528 F.3d at 1198.    .

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Trevizo, 871 F.3d at 675 (citing Ryan v. Comm'r of Soc. Sec., 528 F.3d at 1198). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. (citing Ryan v. Comm'r of Soc. Sec., 528 at 1198). When a treating physician's opinion is not controlling, the ALJ should weigh it according to factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. Trevizo, 871 F.3d at 676; see 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

Although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," Lester, 81 F.3d at 831, state agency physicians are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability

evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Soc. Sec. Ruling 96-6p; <u>Bray v. Comm'r Soc. Sec. Admin.</u>, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (the ALJ properly relied "in large part on the DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating doctor's testimony regarding the claimant's functional limitations). Reports of non-examining medical experts "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995).

### 2. The ALJ Failed to Properly Consider the Medical Expert's Testimony

At the hearing, medical expert Dr. Howard Milstein, a board certified internal medicine physician, testified after full review of the record that in his opinion, as of September 5, 2007, plaintiff met the requirements for Listing 1.02A, involvement of one major peripheral weight-bearing joint. [AR at 40.] Dr. Milstein opined that plaintiff had the severe impairments of bilateral knee replacements, severe osteoarthritis of both knees, a severe infection of cellulitis in the right knee, bunions, hammer toes which required surgery in 2008 and 2009, and neuropathy in both feet which required the use of a cane or crutch. [AR at 39.] The ALJ specifically asked if these impairments met or equaled a listing, and Dr. Milstein testified that they did. [AR at 39, 40.] Specifically, he opined that the peripheral weight-bearing joint "could be either knee, mostly the right knee because that's the worst of the two. And if you throw in the left knee and both feet, I think it equals that listing." [AR at 40.] The ALJ specifically asked if the conditions would meet Listing 1.02A as of September 5, 2007, and Dr. Milstein testified that they would. [<u>Id.</u>] While Dr. Milstein based his opinion on his review of the medical evidence dating back to 2008, he testified that "there's no way this happened overnight." [<u>Id.</u>]

The ALJ rejected Dr. Milstein's opinion as follows:

> [N]o treating or examining medical source assessed [plaintiff] as disabled prior to September 2007 and, while a medical expert testified [plaintiff] equaled Medical Listing 1.02A, the statement is totally inconsistent as it relates to the relevant time from before the date last insured and therefore must be rejected as unsupported by any corresponding or supporting medical evidence. The State Agency non-examining medical evaluators also reviewed the file as of August and December 2014 and found a lack of medical evidence to support a finding [plaintiff] had any

severe impairments as of his date last insured.

[AR at 22 (citing AR at 42-48, 50-58).]

Reports of non-examining medical experts "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." Andrews v. Shalala, 53 F.3d at 1041. Here, the ALJ found that Dr. Milstein's opinion was "totally inconsistent" as it relates to the relevant time from before the date last insured and is unsupported by corresponding or supporting medical evidence. [AR at 22.] However, the ALJ did not specify which corresponding and supporting medical evidence fails to support Dr. Milstein's opinion. To the extent that the ALJ intended that Dr. Milstein's opinion was inconsistent with the medical evidence, the Court disagrees. In fact, Dr. Milstein's opinion is supported by medical evidence dating back to 2007, specifically the x-ray of plaintiff's right knee in November 2007 and the MRI of plaintiff's right knee in January 2008, as well as with plaintiff's subsequent pain treatment and knee replacements. [AR at 40.] As discussed below, this evidence corroborates Dr. Milstein's testimony of the progressive disease process of plaintiff's condition, and supports his expert opinion that plaintiff met or equaled the Listing before the x-ray and MRI were taken. [Id.] Thus, contrary to the ALJ's finding, Dr. Milstein's report *is* consistent with other evidence in the record as it relates to the relevant time frame, i.e., from before the date last insured.

An x-ray of plaintiff's right knee revealed osteoarthritis on November 19, 2007. [AR at 470.] An MRI on January 2, 2008, found that plaintiff's right knee had severe cartilaginous thinning, large joint effusion, synovial thickening, trabeculor bone edema of the medical femoral condyle and medial tibial plateau, and degenerative changes of both the medial and lateral meniscus. [AR at 468.] Thus, just four months after the alleged onset date, the MRI provided substantial evidence of plaintiff's joint damage, and the x-ray provided further evidence of right knee osteoarthritis just two months after the alleged onset date. [AR at 468, 470.] This evidence of record is consistent with Dr. Milstein's expert opinion that, due to the progressive nature of osteoarthritis, plaintiff's onset date necessarily predated both the MRI and the x-ray.

Dr. Milstein's opinion is also supported by the subsequent degeneration of plaintiff's condition. On April 4, 10, and 17, 2008, plaintiff received Synvisc injections to his left knee [AR

at 975, 977], and eventually underwent a right knee replacement on November 18, 2008. [AR at 931, 978.] Plaintiff continued to have severe osteoarthritis of the left knee joint and, after multiple injections [AR at 956-58, 960, 972], underwent a left knee replacement on December 27, 2011. [AR at 904-07, 950-53.] Thus, the record substantiates plaintiff's chronic pain and degenerative joint damage documented from 2007 through 2011. As Dr. Milstein testified, the progressive nature of osteoarthritis corroborates these findings and led to his expert opinion that plaintiff equaled Listing 1.02A at the alleged onset date through the date last insured. [AR at 40.] Accordingly, the ALJ improperly rejected Dr. Milstein's opinion when she stated that it was inconsistent as it relates to the date last insured and was unsupported by any corresponding medical evidence.

The ALJ also stated that in August and December 2014, the State Agency non-examining evaluators "found a lack of evidence to support" Dr. Milstein's findings. [AR at 22.] While this statement implies that the evaluators contradicted Dr. Milstein's findings, the ALJ at least partially mischaracterized their findings.

Dr. Jerry Thomas reviewed the record as it stood in August 2014, stated there was no diagnosis and a lack of medical evidence in the record, and determined that plaintiff's impairments of a dysfunction of major joints and HIV were *non-severe*. [AR at 45-46.] However, in December 2014, Dr. S. Garcia reviewed the record and stated that the primary impairment was dysfunction of major joints, which was *severe*, with a secondary impairment of HIV, which was also *severe*. [AR at 55.] Dr. Garcia specifically concluded that there was "insufficient evidence to evaluate the claim." [Id.] Thus, the State Agency opinions were inconsistent with *each other*, and do not fully support the ALJ's finding that Dr. Milstein's opinion was contradicted by the State Agency opinions.

Furthermore, while Dr. Milstein reviewed the entire record, it is unclear exactly what medical evidence Dr. Thomas and Dr. Garcia reviewed. [See, e.g., AR at 43-48, 52-55.] Dr. Thomas' report contains multiple sources of evidence identified as "Unknown Name," has few notes or

findings,[5] and a list of "evidence requested" which may or may not have been received or reviewed. [AR at 43-48.] Likewise, Dr. Garcia's report has vaguely listed "unknown" and "requested" sources of evidence, and few notes or findings of fact[6], and he concludes that there was insufficient evidence to evaluate plaintiff's claim. [AR at 52-55.] Accordingly, the State Agency opinions do not provide substantial evidence necessary to support the ALJ's finding that Dr. Milstein's opinions were unsupported or inconsistent with the record.

The Court finds that the ALJ did not provide a specific and legitimate reason based on substantial evidence of record for rejecting Dr. Milstein's opinion that plaintiff met Listing 1.02A as of September 5, 2007, the alleged onset date.

**B.     CONCLUSION**

Based on the foregoing, the ALJ did not provide a specific and legitimate reason based on substantial evidence of record for rejecting Dr. Milstein's testimony that plaintiff met Listing 1.02A since September 5, 2007. Dr, Milstein's testimony was based on a full review of the record and is consistent with substantial evidence that corroborates a progressive condition that necessarily predated the date of its first documentation. Additionally, the ALJ's reasons for finding the State Agency physicians' findings inconsistent with Dr. Milstein's opinion mischaracterize the actual findings and do not provide a specific and legitimate reason for rejecting Dr. Milstein's opinion. Remand is warranted on this issue.

**VI.**

**REMAND FOR PAYMENT OF BENEFITS**

The Court has discretion to remand or reverse and award benefits. Trevizo v. Berryhill, 871 F.3d at 682 (citation omitted); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no

---

[5]   In fact, in one note Dr. Thomas "describes" one source of evidence as "Labs p5," and in another note "07/08/08 Progress Note: PE: (difficult to read)." [AR at 44.]

[6]   With respect to the medical record, Dr. Garcia's "notes" include the same two comments made by Dr. Thomas. [AR at 53-54; see also supra note 5.]

useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Trevizo v. Berryhill, 871 F.3d at 682 (citing Garrison, 759 F.3d at 1019).

Where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, it is appropriate to exercise this discretion to direct an immediate award of benefits. Garrison, 759 F.3d at 1020 (setting forth the three-part credit-as-true standard for exercising the Court's discretion to remand with instructions to calculate and award benefits); see also Lingenfelter v. Astrue, 504 F.3d 1028, 1041 (9th Cir. 2007); Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96; see also Connett v. Barnhart, 340 F.3d 871 (9th Cir. 2003) (cautioning that the credit-as-true rule may not be dispositive of the remand question in all cases, even where all three conditions are met). In Garrison, the Ninth Circuit, noting that it had never exercised the flexibility set forth in Connett in a published decision, clarified that the nature of that flexibility is "properly understood as requiring courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." Garrison, 759 F.3d at 1020-21.

In this case, under Connett, the Court finds that remand for payment of benefits is appropriate because, as discussed above, the ALJ failed to provide legally sufficient reasons for rejecting or discrediting medical opinion evidence, and an evaluation of the record as a whole does not create serious doubt that plaintiff is, in fact, disabled. Dr. Milstein's expert opinion that plaintiff equaled Listing 1.02A at the alleged onset date through the date last insured is supported by the record, which reflects plaintiff's chronic pain and degenerative joint damage. Had the ALJ credited this medical opinion, plaintiff's disability would have been conclusively presumed and benefits

11

awarded.  Lounsburry, 468 F.3d at 1114.

Accordingly, because the ALJ failed to provide legally sufficient reasons for rejecting the medical expert's opinion, and because all three factors favoring remand for an award of benefits are satisfied, remanding for further administrative proceedings "would serve no useful purpose and would unnecessarily extend [plaintiff's] long wait for benefits." Benecke, 379 F.3d at 595; see also Regennitter v. Comm'r, 166 F.3d 1294, 1300 (9th Cir. 1999) (where the court "conclude[s] that . . . a doctor's opinion should have been credited and, if credited, would have led to a finding of eligibility, we may order the payment of benefits.").

## VII.
## CONCLUSION

**IT IS HEREBY ORDERED** that:  (1) the decision of the Commissioner is **reversed**;  and (2) this action is **remanded** to defendant for payment of benefits consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:  July 25, 2019

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE